Filed 11/21/25  In re Z.L. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re Z.L. et al., Persons Coming Under the Juvenile Court Law. | B344383 (Los Angeles County Super. Ct. No. 24CCJP03800) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CAROLINA R.,<br><br>    Defendant and Appellant. | |

APPEAL from the dispositional orders of the Superior Court of Los Angeles County, Julie Fox Blackshaw, Judge. Affirmed.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Eden Gharapet, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Mother Carolina R. challenges the juvenile court's dispositional order insofar as it removed her children, Z.L. and G.L., from mother's custody. Mother does not challenge the juvenile court's assumption of jurisdiction, which was based on domestic violence and mother's alcohol abuse. Mother contends the juvenile court could have left the children in her care and imposed conditions to ensure the children's safety. The evidence, however, shows the Los Angeles County Department of Children and Family Services (DCFS or the Department) attempted to do just that prior to initiating dependency proceedings, and mother refused to comply with the conditions of her safety plan. In addition to her own refusal to comply, mother instructed the children to lie to social workers to prevent the social workers from learning mother was violating the safety plan. We conclude substantial evidence supports the juvenile court's removal of the children from mother's custody and affirm the dispositional order.

## BACKGROUND[1]

Z.L. was born in 2008. G.L. was born in 2012. Mother has two adult children.

_____

[1] We summarize only the facts relevant to the issue mother raises on appeal. The juvenile court found the children's

In 2015 and 2016, mother was convicted of driving while under the influence, and in 2018, she drove with a suspended license.

On October 11, 2024, an unidentified person contacted DCFS and reported mother's companion, J.H., moved into mother's home after his release from incarceration. The person reported loud sounds, mother crying, and mother yelling " 'please stop, no don't, stop it, you're pulling my hair.' " The unidentified person stated the children feared for mother's safety, Z.L. felt depressed, and G.L. slept on the floor in the kitchen to try to escape the loud noises.[2]

### 1. *Prior to the dependency petition, mother agrees to a safety plan and then violates it*

On October 13, 2024, two days after the report that J.H. moved into mother's home and that there was domestic violence between him and mother, mother agreed to a safety plan to allow the children to remain in her custody. Under the terms of the safety plan, J.H. was to "reside out of the home" and have "no access to the children."

Two days later, on October 15, 2024, a social worker observed J.H. in the home and when the social worker asked

---

father to be a presumed father. He did not request custody of the children and is not a party to this appeal.

[2] DCFS found prior referrals concerning mother's alcohol abuse inconclusive. In 2018, an unidentified person reported mother drinks "a lot" of alcohol. According to the unidentified person, while drinking, mother would leave the children unattended. In April 2021, an unidentified person reported mother abused alcohol and left the children home alone when she would drink.

mother about J.H.'s presence in the home, mother "attempted to make excuses." Mother also called a hotline and asked if the children could reside with their adult sibling so that J.H. could remain in mother's home.

On October 16, 2024, a social worker asked mother to test for drugs and mother refused.

On October 18, 2024, Z.L. told her therapist mother lied to police about J.H.'s name. Z.L. told her therapist mother instructed Z.L. to lie to the social worker so that she would not "have to go to foster care . . . ."

On October 29, 2024, a social worker asked mother if she were willing to obtain a restraining order against J.H. and mother refused. Mother again refused to test for controlled substances. Mother denied alcohol abuse.

On November 22, 2024, mother initially denied that J.H. was "paroled to" her home, but later admitted that fact to a social worker. Mother also admitted J.H. had slept in her home the previous night. The children also were at mother's home.

## 2.  *DCFS petitions for juvenile court jurisdiction*

On December 4, 2024, DCFS filed a Welfare and Institutions Code[3] section 300 petition, identifying Z.L. and G.L. as dependents of the juvenile court.

As later sustained, DCFS alleged mother allowed her male companion, J.H., to reside in the home. J.H. was on parole after serving a prison term for committing an unidentified violent felony. Z.L. overheard oral altercations between mother and J.H., and mother had a large bruise on her face and throat.

---

[3] Undesignated statutory citations are to the Welfare and Institutions Code.

4

Mother told Z.L. to "lie" about these incidents. The incidents caused Z.L. anxiety. As also alleged, allowing J.H. to remain in the family home and failing to protect the children endangers the children's physical health and safety and places them at risk of serious physical harm.

As further sustained, DCFS alleged mother has a history of substance abuse and currently abused alcohol rendering her incapable of caring for the children. Mother was under the influence of alcohol while the children were in her care and supervision and had prior convictions for driving under the influence of alcohol. Mother's substance abuse endangers the children's physical health and safety and places them at risk of serious physical harm.

### 3.     *DCFS reports*

#### a.     **Detention report**

DCFS reported it placed the children with their adult sibling C.O. because of "mother's failure to comply with the safety plan . . . ."

DCFS interviewed Z.L.'s therapist, who reported that Z.L. "heard a big bang coming from mother's room, then [Z.L.] heard a scream." Z.L. heard mother ask J.H. to stop pulling her hair and heard mother call J.H. a drug addict. Hearing the abuse made Z.L. anxious. When Z.L. asked mother why her face was bruised mother responded she hurt herself with a belt buckle. Z.L. told her therapist mother was "threatening" Z.L. to prevent Z.L. from telling social workers the truth because mother did not want the children placed in foster care.

Z.L. reported mother and J.H. fought for two days, and although Z.L. did not see the fight, she overheard it. Z.L. told the

social worker she heard mother scream and then cry. Z.L. also reported mother drank alcohol every day. Z.L. further reported mother told her " 'to lie since the incident,' " but did not elaborate.

The social worker also interviewed G.L. G.L. told the social worker he felt safe with mother. He reported mother drank champagne once or twice a week. G.L. overheard mother and J.H. arguing, but he did not recall what they said. G.L. observed a bruise on mother; mother told him she had "hit herself on the counter."

The social worker observed that mother's face was bruised and the bruise was about two to three inches wide. Mother told the social worker she was hurt when she was trying to throw a duffle bag at J.H. Mother also stated she "hit her chin on the sink." The social worker noticed mother "reeked of alcohol" and mother admitted to drinking champagne but asserted she drank only " 'once in a while.' "

On October 29, 2024, mother refused a social worker's request to obtain a restraining order against J.H. Also on October 29, 2024, mother refused a social worker's request she test for controlled substances. On November 22, 2024, after noticing mother's speech was slurred, the social worker again asked mother to test for controlled substances and mother refused.

### b. DCFS investigates returning the children to mother's custody

In December 2024, DCFS investigated mother's home to assess whether the children could return safely to mother's custody. When interviewed by a social worker, mother promised to ensure the children's safety and well-being. Mother stated she

was actively seeking parenting classes and individual counseling classes, but mother could not provide the address where she sought those services. There was no evidence that mother had enrolled in any services. Mother also asserted she would adhere to her case plan and court orders. When the social worker asked mother to test for controlled substances, mother refused once again. Mother told the social worker that after DCFS stopped its involvement, she planned to marry J.H. The social worker concluded mother does "not understand" why J.H. cannot be around the children.

The children's adult sibling, C.O., believed the children should remain in her care until mother developed healthier "boundaries" and addressed her alcohol abuse. C.O. reported mother chastised Z.L. because mother believed Z.L. caused DCFS to investigate the family. C.O. also reported that mother failed to consider the children's medical needs.

Both children "confirmed that mother told them to lie" to the social worker and the police about J.H. living in the home.

### c.    Jurisdiction/disposition report

When interviewed by a social worker in advance of the jurisdictional and dispositional hearing, G.L. reiterated that mother told him to lie to DCFS about J.H. living in the home because, according to G.L. mother was scared the social worker would place the children in foster care. Z.L. also reported mother told her to lie so that the social worker would not remove the children from mother's custody.

The children's father reported mother was an alcoholic and when he met her, she also used cocaine and marijuana. (Father did not say when he met mother.) The children's father said he and mother drank tequila and used cocaine every day. The

children's father also admitted to domestic violence during his relationship with mother.

Both children expressed a desire to live with mother.

### d.     Last minute information

In a report filed January 17, 2025, DCFS recommended that the children remain detained from mother and reunification services be provided to mother.

## 4.     *The juvenile court assumed jurisdiction and removed the children from mother's custody*

After a hearing at which no one testified, the juvenile court took jurisdiction over the children and removed them from mother's custody.  The court explained:  "There's some work to be done for this court to believe that the children can be safe in her care . . . ."  "I think it's significant that the mother is coaching the children; although, they are honest children and did not end up lying, but the mother would continue to do that. . . . If the court and the Department can't trust a parent and the children to honestly state what's going on in the home, then there's no assurance that the children are safe.  [¶]  Also, the fact that the mother has not addressed any of the issues, the DV issue, the substance abuse issue, . . . it doesn't give the court any comfort that it will be addressed if the children are released to her home."

The juvenile court found by clear and convincing evidence that there was a substantial danger to the physical health, safety, protection, or well-being of the children in mother's custody, and there was no reasonable means to protect the children without removing them from mother's custody.  The court ordered mother attend a full drug and alcohol program with

8

weekly testing. The court also ordered mother attend parenting classes and participate in individual counseling.

The court agreed to set a progress hearing prior to the next statutorily scheduled hearing to determine if the children could safely return to mother's custody. Mother filed a notice of appeal February 18, 2025 that recited she was appealing from "[a]ll appealable orders made on [February 4, 2025]."

## DISCUSSION

On appeal, mother does not contest jurisdiction. Mother argues no substantial evidence supports the juvenile court's finding that absent removal from her custody, the children could not be protected. Mother argues the juvenile court could impose protective measures such as an order to keep J.H. away from the home, unannounced visits, and mother's participation in alcohol abuse treatment and testing. Mother admits she "did not previously follow a safety plan . . . ."

The juvenile court may remove a dependent child from his or her parent's physical custody if, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . custody." (§ 361, subd. (c)(1).) The juvenile court must find clear and convincing evidence to remove the children. (*In re M.V.* (2022) 78 Cal.App.5th 944, 959.) "We review a dispositional order removing a child from a parent for substantial evidence, ' "keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence." ' [Citation.]" (*Id.* at p. 960.)

9

Substantial evidence supported the juvenile court's finding that there were no reasonable means to protect the children without removing them from mother's custody. Significantly, DCFS attempted to implement a safety plan prior to initiating dependency proceedings, and mother failed to comply with it and instructed the children to lie to the social worker about J.H.'s presence in mother's home. Although mother promised to keep J.H. out of the home, she allowed him to live there and refused to obtain a restraining order against him. Mother also refused to test for controlled substances. The evidence that mother refused to comply with the safety plan supports the conclusion that a reiterated safety plan would not protect the children.

In addition to mother's failure to comply with the safety plan, mother also failed to acknowledge the risk her conduct posed to the children. Z.L. was born in 2008 and her father indicated that when he met mother, the two used cocaine, marijuana, and alcohol together and mother was an alcoholic at that time. He also indicated there was domestic violence during his relationship with mother. Mother's refusal to acknowledge her longstanding alcohol abuse and pattern of domestic violence undermines her ability to ameliorate the circumstances that led to the dependency petition.

Finally, mother's challenge to the sufficiency of the evidence is not based on evidence at the time of the jurisdictional hearing, but instead, on her counsel's argument.[4] There was *no* evidence mother would comply with conditions imposed by the

---

[4] Mother's counsel argued there was no proof mother would not follow a court order. Mother's counsel asserted, mother "will follow any order, do any program necessary, if it means she can have the kids safely in her care."

juvenile court. Although mother had stated months earlier that she was willing to do "whatever is necessary to ensure the safety of the children," mother took no action consistent with that assertion. There was no evidence mother was working towards ameliorating the conditions leading to the dependency petition. There was no evidence mother would keep J.H. out of the family home. Mother had neither started any ameliorative program nor obtained a restraining order against J.H. In short, substantial evidence supported the juvenile court's order that removing the children from mother's custody was necessary to protect their safety.

## DISPOSITION

The juvenile court's dispositional orders are affirmed. <u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

11